JEWISH COLONIZATION ASS'N et al. v. SOLOMON & GERMANSKY et al.

(Circuit Court, S. D. New York.   May 29, 1907.)

No. 8,445.

TRADE-MARKS AND TRADE-NAMES—SUIT FOR INFRINGEMENT—UNFAIR COMPETITION.

"Rischon-le-Zion" is the name which was given to a farm or tract of land in Palestine settled by a colony of Jews and devoted to the raising of grapes and the production of wines and brandies; large wine cellars being established there for use in connection with such business. For the sale of its products various agencies were established under the name of the "Carmel Wine Company," "Carmel" being the name of a mountain in Palestine where no grapes or wine are produced. A consignment of the wines and brandies was sent to the United States which was placed in the hands of defendants to be sold, labels being also sent the same as those used in Europe, and bearing the names "Rischon-le-Zion" and "Carmel Wine Company." Subsequently a corporation by the name of "Carmel Wine Company" was organized in this country by the proprietors of the Rischon-le-Zion products to act as the American agent for their sale. *Held*, that such names might properly be adopted as trade-marks for such particular products, and that their use by defendants on labels for other wines and brandies than those contained in the consignment which they were authorized to sell constituted unfair competition which would be enjoined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 13, 82.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit for infringement of trade-marks and unfair competition.

See 125 Fed. 994.

Walter F. Rogers, for complainants.

Hunt, Hill & Betts (Geo. Whitefield Betts, Jr., and Reginald W. Brixey, of counsel), for defendants.

HOLT, District Judge. This is a suit to restrain unfair competition in trade.

About 1882 there were established in Palestine various settlements or colonies of Jews, under what was called the "Zionist movement," having in view the settlement of oppressed or destitute Jews in the ancient home of the race, and the development among them of the occupation of agriculture. Various tracts of land in Palestine were accordingly purchased, and were settled by Jews from Russia and other countries where they had been subject to persecution. One of the first of these farms or colonies was called "Rischon-le-Zion." This colony occupied a tract or farm of about 1,750 acres, and the Jews who settled there went principally into the business of raising grapes for the manufacture of wines and brandies. For the purpose of encouraging this and similar colonies, Baron de Rothschild established at Rischon-le-Zion very large and thoroughly equipped wine cellars, where the wine and brandy made from the grapes raised in the colony could be stored and ripened. For the purpose of marketing the wines and brandies from these cellars of Rischon-le-Zion, various agencies were established in different cities of Europe, which did business under the name of the "Carmel Wine Company." To introduce the wines and brandies from Rischon-le-Zion into the United States, Mr. Scheid, the manager of the cellars for Baron de Rothschild, consigned in December, 1898, and January, 1899, a lot of the wine and brandy to Mr. Sarasohn at New York. Mr. Sarasohn was the editor of a Jewish newspaper. He turned over this consignment to the defendants to be sold. A considerable portion of this consignment was in hogsheads, and there were sent with the consignment various labels which were used by the Carmel Wine Company in Europe, to be put upon the bottles when the wine was bottled. There were not enough labels sent to be put upon all the wine to be bottled, and the defendants thereupon had them reproduced, so that all of the consignment which was bottled had attached the labels of the Carmel Wine Company. Subsequently the complainant the Jewish Colonization Association was organized, and took over from Baron de Rothschild the ownership and management of the wine cellars at Rischon-le-Zion, and the control of the various agencies in Europe, selling its product under the style of the "Carmel Wine Company." In November, 1900, Mr. Lewin-Epstein, who had organized the various agencies in Europe under the style of the "Carmel Wine Company," came to New York, and, with the complainants Gluskin and Goldberg, organized a firm at New York under the firm name of the "Carmel Wine Company," and were duly authorized by the Jewish Colonization Association to be the sole agents for the sale in this country of the wines and brandies from the Rischon-le-Zion cellars, and to use, as such agents, the trade-marks and labels which had been used by the Carmel Wine Company in Europe. They thereupon began and have since continued business in New York as such agents. The defendants from the time they received the consignment of wines and brandies sent to Sarasohn have continued to sell wines and brandies, using, in some cases, precisely the same labels, and in others labels substantially similar to those of the Carmel Wine Company. This suit is

brought to restrain them from selling or purporting to sell wines or brandies purporting to be from the cellars of Rischon-le-Zion, or to be the wines or brandies of the Carmel Wine Company, and from using the labels and trade-marks of that company.

There are various defenses in this case. One is that there can be no trade-mark in the names "Rischon-le-Zion" or "Carmel," because it is claimed that they are mere geographical names. Rischon-le-Zion is not a geographical name. It is not the name of a town or country It is the name of a farm or tract of land, and, as used in this trade, is more properly the name of a wine cellar established on such tract. The word "Carmel" is the name of a mountain in Palestine. No grapes are grown or wines produced there. In my opinion, both "Rischon-le-Zion" and "Carmel" are names which can be adopted as a trade-mark. The defendants claim that there are or may be persons at Rischon-le-Zion who produce wine which is not stored in the cellars which were built by Baron de Rothschild. The evidence leads me to doubt whether there are such persons, and, in any event, the proof only shows that there may be two such persons, who presumably produce a very small amount. Undoubtedly any one in Palestine can make wine or brandy and sell it; but, as the wine or brandy which was sold by the Carmel Wine Company was universally known by Jews throughout the world as the product of the Rothschild cellars, and as such enjoyed a very high reputation for purity and excellence, it is obvious that other manufacturers of wine or brandy in Palestine should sell their goods under a distinctive name. The defendants claim, also, that they have always dealt in genuine Palestine wines and brandies, and that, as they were the first to use the style of the Carmel Wine Company and Rischon-le-Zion in this country, they have a right to continue business under the same name. But their only right to use those names and the labels of the Carmel Wine Company was confined to the shipment of the goods which they received from Sarasohn. Sarasohn was apparently the purchaser of those goods; but, if he is to be regarded as an agent and the defendants as his subagents, their agency and the right to use the Carmel Wine Company labels and trade-marks was confined to that particular consignment. Their continued use of such labels and trade-marks, without the consent and against the will of the Jewish Colonization Association, and of the Carmel Wine Company of New York, constituted, in my opinion, a clear case of unfair competition in trade.

My conclusion is that the complainants are entitled to a decree for a permanent injunction, restraining the defendants from selling any goods purporting to be from the Rischon-le-Zion cellars or to be the goods of the Carmel Wine Company, or upon which any labels are placed which are substantial imitations of the labels of the Carmel Wine Company.

The decree should be settled upon notice.